# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY MCDONALD,<br><br>                Plaintiff,<br><br>    v.<br><br>J. A. YATES, et al.,<br><br>                Defendants.<br>_____/ | CASE NO. 1:09-cv-00730-LJO-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE DENIED<br><br>(Doc. 76)<br><br>TWENTY-DAY OBJECTION DEADLINE |

**Findings and Recommendations - Defendants' Motion for Summary Judgment**

**I.      Procedural History**

Plaintiff Jimmy McDonald, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on April 24, 2009. This action for damages is proceeding against Defendants Cano, Clark, Rodriguez, and Roberts for acting with deliberate indifference to a substantial risk of harm to Plaintiff's health and/or safety, in violation of the Eighth Amendment of the United States Constitution.[1] Plaintiff's claim arises out of Defendants' alleged failure to accommodate Plaintiff's medical need for a lower bunk between April and August 2006.

On July 6, 2012, Defendants filed a motion for summary judgment. Fed. R. Civ. P. 56(a). Plaintiff filed an opposition on July 30, 2012, and Defendants filed a reply on August 8, 2012.[2]

---

[1] Defendants Yates and Igbinosa and Plaintiff's claims for equitable relief were dismissed from the action on February 3, 2011, for failure to state a claim. 28 U.S.C. § 1915A. (Doc. 16.)

[2] In addition to the notice of the requirements for opposing a motion for summary judgment provided by the Court on May 5, 2011, the Court re-issued the notice on July 9, 2012, and Defendants issued a notice on July 13, 2012, in accordance with the decision in Woods v. Carey, 684 F.3d 934, 935-36 (9th Cir. 2012).

Defendants' motion for summary judgment has been submitted upon the record, and these findings and recommendations now issue. Local Rule 230(l).

**II.      Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 1566 (quotation marks and citation

omitted). The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.  Discussion**

    **A.  Plaintiff's Allegations**[3]

Plaintiff was incarcerated at Pleasant Valley State Prison (PVSP) in Coalinga, California, during the events at issue. Plaintiff, who suffers from a seizure disorder, alleges in his complaint that between April and August 2006, he repeatedly argued with Defendants Cano, Clark, Rodriguez, and Roberts over his housing assignment and his concerns about risk of injury, and he unsuccessfully sought a bed move from them to a lower bunk on a lower tier. Plaintiff alleges that he "personally illustrated his medical condition and custodial needs." (Doc. 1, Comp., 6:12.)

Plaintiff alleges that on or around July 19, 2006, he again requested a lower bunk and he and Defendant Cano argued, with Defendant Cano telling him, "I'm tired of your complaining all the time; if you keep it up, I'll move you to another building." (Id., 6:20-22.)

Plaintiff alleges that Defendants disregarded the prison's medical protocol, procedures, and policies, which were established to prevent him from being assigned to an upper bunk in light of his seizure disorder. Plaintiff alleges that Defendants ignored his pleas and risk factors and engaged in harassment against him.

On September 2, 2006, Plaintiff had a seizure and fell from his top bunk. Plaintiff sustained two broken ribs, a fractured nose, and a chipped neck bone, and he was transported to Stanford University Medical Center for treatment. Plaintiff alleges that after his fall, Defendants again endangered him by reassigning him to an upper bunk.

    **B.  Eighth Amendment Legal Standard**

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir

---

[3] Plaintiff's complaint is verified and therefore, it is treated as an opposing declaration to the extent it is based on Plaintiff's personal knowledge of specific facts which are admissible in evidence. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004).

3

2009), *cert. denied*, 130 S.Ct. 1937; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Under section 1983, Plaintiff must demonstrate a link between the actions or omissions of each named defendant and the violation of his rights. Ashcroft v. Iqbal, 556 U.S. 662, 676-77, 129 S.Ct. 1937 (2009); Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas, 611 F.3d at 1151-52; Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847. Prison officials' duty under the Eighth Amendment is to ensure reasonable safety, and prison officials may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted. Farmer, 511 U.S. at 847 (quotation marks and citations omitted).

///

///

**C.     Undisputed Facts**

1. Plaintiff arrived at PVSP in April 2005 and he was assigned to Facility A.

2. Upon arrival at PVSP, Plaintiff received an "intake informational chrono" for a lower bunk/lower tier housing assignment because of his medical condition.

3. On March 10, 2006, Dr. Ferro treated Plaintiff for complaints of pain. In addition to prescribing Plaintiff medication and ordering an imaging study, Dr. Ferro completed a "comprehensive accommodation chrono" (form CDC 7410), requesting that he receive an egg-crate mattress.

4. A comprehensive accommodation chrono must be completed if an inmate requires an accommodation due to a medical condition. A new form must be completed when a change to an accommodation is required or upon renewal of a temporary accommodation. Any new form that is generated must include previous accommodations if they still apply.

5. Dr. Ferro's orders and accommodation chrono did not request or indicate that Plaintiff required a low-bunk assignment.

6. Defendants Cano and Roberts were the second-watch housing officers in Building 2; Defendant Rodriguez was one of the third-watch housing officers in the building; and Defendant Clark was a second-watch relief officer, who covered Cano's or Roberts's shift on their days off.

7. If an inmate showed Defendants a comprehensive accommodation chrono indicating that he required a low bunk or low tier assignment, Defendants' customary practice was to verify the chrono with medical staff because inmates sometimes forged or altered their chronos to receive greater accommodations than what medical staff prescribed. If medical staff confirmed the chrono was valid or up-to-date, Defendants completed a GA Form 154 requesting that the inmate be moved to a bed or cell to accommodate his needs. Defendants then submitted the form to their supervisor, usually the sergeant, for approval. The sergeant reviewed the request to ensure no compatibility or security concerns existed with the requested move. If no safety concerns arose, the sergeant approved the form and sent it to Central Control for final approval based on the institution's needs and availability.

8. Medical bed or cell moves were usually done within a day or two of the inmate informing the housing officer of his accommodation chrono.

9.   On August 9, 2006, Nurse Practitioner Coleman treated Plaintiff for various complaints, including pain. She prescribed him medication and a chrono for an egg-crate mattress, and she also completed the comprehensive accommodation chrono form for Plaintiff to receive the egg-crate mattress, but her orders and accommodation chrono did not request or indicate that Plaintiff required a low-bunk assignment.

10.  On September 3, 2006, at approximately 5:20 p.m., Plaintiff fell off his top bunk and was taken to an outside medical facility for treatment. He sustained rib fractures and a cervical fracture. He returned to the prison the next day with instructions to rest and take pain medication.

11.  Plaintiff does not know if he fell from his bunk due a seizure or because he was half asleep.

12.  On September 7, 2006, medical staff treated Plaintiff for his injuries and prescribed him a chrono for a low bunk/low tier assignment to be effective immediately.[4] Medical staff also completed the comprehensive accommodation chrono form for a permanent low-bunk, low-tier assignment.

13.  None of the Defendants had access to Plaintiff's medical records and they did not know what medical conditions he had.

### D.   Summary of Defendants' Position

The objective element of an Eighth Amendment claim is not at issue. There is no dispute that Plaintiff has a seizure disorder and no argument has been made that housing an inmate with a seizure disorder on an upper bunk does not present a risk of harm sufficient to implicate the Eighth Amendment.

Rather, the issue is whether Defendants knew Plaintiff had a medical need for a lower bunk and disregarded the risk of harm to him. Defendants argue that they did not have access to Plaintiff's medical file or knowledge of its contents, and they deny knowing that Plaintiff had a seizure disorder or that he had a valid chrono for a lower bunk assignment.

Plaintiff arrived at PVSP in April 2005 and while Plaintiff had an intake informational chrono, dated April 21, 2005, in which the receiving and release nurse documented his seizure

---

[4] Although Plaintiff argues that the chrono was not immediately honored, the fact that it was issued "effective immediately" remains undisputed.

6

1  disorder and chronic medical condition requiring a lower bunk on a lower tier, Defendants contend
2  that there is no evidence that the chrono was sent to his housing unit, that it was permanent, or that
3  it was valid outside of receiving and release. Defendants point to the absence of any mention of a
4  lower bunk/lower tier assignment in Dr. Ferro's orders and accommodation chrono from March 10,
5  2006, or in Nurse Practitioner Coleman's orders and accommodation chrono from August 9, 2006.

6  Defendants also deny that they had the authority to move Plaintiff without approval from
7  their supervisor and Central Control. Defendants contend that even if Plaintiff had repeatedly
8  requested a move, as he alleges, there is no evidence that they could have moved him in the absence
9  of a valid lower bunk chrono and supervisory approval.

10  Defendants also argue that there is no evidence that Plaintiff fell from his bunk because he
11  had a seizure, and in the absence of evidence that their actions or omissions caused him harm, they
12  are entitled to judgment.

### E. Summary of Plaintiff's Position[5]

14  Plaintiff argues that while he cannot prove that the housing officers received a copy of his
15  chrono, he showed Defendants his chrono copy and despite what they state is their customary
16  practice, they did not check to see if the chrono was valid, failing even to make a "simple telephone
17  call." (Opp., 2:7-3:4 & 6:10-13.) In addition to his own statements signed under penalty of perjury,
18  Plaintiff submits the declarations of four other inmates who attest that in July and August 2006,
19  approximately, they witnessed Plaintiff repeatedly attempt to get lower bunk housing due to his
20  seizure condition and they witnessed Plaintiff show Defendants his accommodation chrono, without
21  results. (Ex. C, pp. 1-2.)
22  ///
23  ///
24  ///
25  ///

---

[5] Plaintiff's opposition is verified and like his verified complaint, it functions as an opposing declaration. Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

**F.      Findings**

   **1.     Defendants' Evidentiary Objections**

As an initial matter, Defendants make various objections to Plaintiff's Exhibits A, B, C, and D, in whole or in part. Only the objections to Exhibit A will be considered because the other evidence objected to is not considered by the Court in resolving the motion for summary judgment.

Exhibit A is comprised of the intake informational chrono dated April 21, 2005, and an "informative chrono" signed by Correctional Sergeant DeFrance. Defendants object on the grounds that the documents are not authenticated, are irrelevant, and contain hearsay. For the reasons set forth below, Defendants' objections are overruled and the chronos are properly considered in resolving Defendants' motion for summary judgment.

   **a.     Relevance**

Given the Court's duty to determine whether there exists a genuine dispute as to any *material* fact, an independent objection to evidence as irrelevant is both unnecessary and unhelpful. E.g., Carden v. Chenega Sec. & Protections Servs., LLC, No. CIV 2:09-1799 WBS CMK, 2011 WL 1807384, at *3 (E.D.Cal. May 10, 2011); Arias v. McHugh, No. CIV 2:09-690 WBS GGH, 2010 WL 2511175, at *6 (E.D.Cal. Jun. 17, 2010); Tracchia v. Tilton, No. CIV S-06-2916 GEB KJM P, 2009 WL 3055222, at *3 (E.D.Cal. Sept. 21, 2009); Burch v. Regents of the University of California, 433 F.Supp.2d 1110, 1119 (E.D.Cal. Jun. 5, 2006). Defendants' objections on relevancy grounds are therefore disregarded.

   **b.     Authentication**

Unauthenticated documents cannot be considered in a motion for summary judgment, Las Vegas Sands, LLC v. Nehme, 632 F.3d 526, 533 (9th Cir. 2011) (citing Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002)) (quotation marks omitted), and therefore, lack of proper authentication can be an appropriate objection where the documents' authenticity is genuinely in dispute. However, an inquiry into authenticity concerns the genuineness of an item of evidence, not its admissibility, Orr, 285 F.3d at 776, and documents may be authenticated by review of their contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing Orr, 285 F.3d at 778 n.24) (quotation marks omitted).

1    Plaintiff's explanatory notations on the exhibits pages are not considered nor are the circles,
2 arrows, and other marks made by Plaintiff on the records. However, no suggestion has been made
3 that the chronos themselves are not official prison records and the contents of the chronos are not
4 obscured or otherwise rendered questionable by Plaintiff's notes and marks. The characteristics of
5 the records themselves in terms of appearance, contents, and substance lead the Court to conclude
6 easily that the documents have been authenticated by their distinctive characteristics and that they
7 are what they appear to be: official prison records. Fed. R. Evid. 901(b)(4); Las Vegas Sands, LLC,
8 632 F.3d at 533; see also Abdullah v. CDC, No. CIV S-06-2378 MCE JFM P, 2010 WL4813572,
9 at *3 (E.D.Cal. Nov. 19, 2010) (finding an objection for lack of foundation and authentication
10 unavailing where the records were from the plaintiff's prison file and they were created and
11 maintained by prison officials); Sanchez v. Penner, No. CIV S-07-0542 MCE EFB P, 2009 WL
12 3088331, at *5 (E.D.Cal. Sept. 22, 2009) (overruling lack of foundation and proper authentication
13 objections to prison medical records submitted by the plaintiff); Johnson v. Roche, No. CIV S-06-
14 1676 GEB EFB P, 2009 WL 720891, at *6 (E.D.Cal. Mar. 13, 2009) (overruling lack of foundation
15 and proper authentication objections to prison records); Burch, 433 F.Supp.2d at 1119 (overruling
16 objections to the introduction of documentary evidence where the defendants did not actually dispute
17 the authenticity of them and where the plaintiff would be able to authenticate them at trial).

18    If Defendants genuinely disputed the authenticity of these records, they could have made a
19 more specific objection. Notably, they did not and their bare objection to Plaintiff's use of prison
20 records for lack of proper authentication is overruled. Fed. R. Evid. 901(b)(4); Las Vegas Sands,
21 LLC, 632 F.3d at 533.

22             **c.    Hearsay**

23    Plaintiff's notations and marks are not considered, as set forth above. As to the chronos
24 themselves, they are records of a regularly conducted activity and are excepted from the rule against
25 hearsay. Fed. R. Evid. 803(6).

26        **2.    Lack of Valid Lower Bunk Chrono**

27    Defendants argue that Plaintiff did not have a valid lower bunk chrono at the time of the
28 events in question, and they submit evidence that a comprehensive accommodation chrono must be

9

completed if an inmate requires an accommodation due to a medical condition and a new form must be completed when a change to an accommodation is required or upon renewal of a temporary accommodation. As a result, any new form that is generated must include previous accommodations if they still apply, and the comprehensive accommodation chronos filled out by Dr. Ferro and Nurse Practitioner Coleman in March and August 2006 did not mention lower bunk/lower tier housing.

The Court finds that whether or not Plaintiff had a valid lower bunk/lower tier chrono between April and August 2006 is a disputed issue of fact which cannot be resolved on the current record. Defendants have submitted evidence which suggests Plaintiff did not because pursuant to standard practice, those accommodations, if still valid, should have been mentioned in the chronos filled out by Dr. Ferro and Nurse Practitioner Coleman 2006. In addition, Plaintiff was issued a lower bunk/lower tier chrono following his fall, which at suggests that one may not have been in place at the time of his fall.

On the other hand, it is possible that Plaintiff had a valid but temporary lower bunk/lower tier chrono and the permanent comprehensive accommodation chrono issued on September 7, 2006, effected the change from temporary to permanent. Additionally, Plaintiff has submitted an intake informational chrono for lower bunk/lower tier housing, which was issued based on chronic medical conditions, including a seizure disorder.[6]

Although Defendants argue that it was not valid, the chrono does not include an expiration date or other apparent limitation on its validity, and Defendants have not shown that the initial

---

[6] With respect to Plaintiff's contentions that informational chronos are of greater importance than accommodation chronos because accommodation chronos change from time to time while informational chronos are used to confirm or deny a requested accommodation, this issue is ultimately not material to the resolution of Defendants' motion. However, in as much as Defendants argue that Plaintiff's statements are hearsay, lack foundation, and are unsupported by any admissible evidence, two observations are warranted.

First, Defendants have mischaracterized Plaintiff's statement in part, albeit presumably unintentionally. Plaintiff did not state that custody staff generated the intake informational chrono dated April 21, 2005. The chrono Plaintiff refers to as being generated by custody staff is the August 2005 CDC-128-B "Informative Chrono" regarding his waiver of his medical chrono generated by Correctional Sergeant DeFrance. (Opp., 2:22-26.)

Second, it is not apparent to the Court why Plaintiff is not competent to testify as to the general weight or meaning of a chrono. Fed. R. Civ. P. 56(c)(4); Fed. R. Evid. 701; Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998); Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990). As a prison inmate, it seems reasonable that Plaintiff would possess basic knowledge regarding chronos of this type, and the general, limited facts he set forth under penalty of perjury are not of the sort which appear to require specialized expertise. Fed. R. Evid. 702.

10

determination that Plaintiff had chronic medical conditions, including a seizure disorder, which required lower bunk/lower tier housing was later overridden, rescinded, or otherwise found to no longer be necessary. Certainly there is no evidence in the record that Plaintiff's seizure disorder, which was the underlying condition necessitating a lower bunk, was a temporary medical condition not at issue between April and August 2006.

Further, the "informative chrono" authored by Sergeant DeFrance in August 2005 documents Plaintiff's "waiver" of his lower bunk/lower tier medical chrono, which clearly suggests that one existed at that point in time. When, or even if, the initial informational chrono was rescinded and/or replaced is simply not ascertainable from the record.

Even if Defendants are correct and Plaintiff did not have a valid lower bunk medical chrono in place between April and August 2006, Plaintiff contends that he showed Defendants his intake informational chrono *and* he told them that he had a seizure disorder requiring a lower bunk. The law requires that prison officials take reasonable measures to abate a risk of harm of which they become aware. Farmer, 511 U.S. at 847. Thus, whether Plaintiff's intake informational chrono was still valid or not, and even if he did not show them a chrono and only placed them on verbal notice, Defendants were required to take reasonable action once they were placed on notice that Plaintiff had a medical condition which required a lower bunk. Farmer, 511 U.S. at 847; Thomas, 611 F3d. at 1151. There is no evidence that Defendant took any action in response to Plaintiff's notice, and they are not entitled to judgment as a matter of law, the presence or absence of a valid medical chrono notwithstanding.

### 3. Lack of Authority to Authorize or Approve Bed Move

Defendants also argue that they did not have the authority to move Plaintiff to a lower bunk. Plaintiff has submitted evidence that correctional officers may initiate a move even though they lack authority to authorize or approve the move, but even if Defendants did not have the final authority to order or approve a bed move, they were still required to take reasonable action once they were placed on notice that Plaintiff had a medical need for a lower bunk. Farmer, 511 U.S. at 847; Thomas, 611 F3d. at 1151.

///

Lack of authority to grant the ultimate relief sought or needed is not a defense to liability in the face of complete inaction. Had Defendants been able to show that they took reasonable measures once placed on notice, the outcome may have been different, but in this case, Defendants deny being on notice and their ultimate lack of authority to authorize or approve bed moves does not shield them from liability.

### 4. Harm

Finally, with respect to the harm suffered, the law prohibits prison officials from knowingly disregarding an excessive *risk* of harm to Plaintiff's health or safety. Farmer, 511 U.S. at 847; Thomas, 611 F.3d at 1150. The law does not require that the threatened harm come to fruition before the claim accrues. Thomas at 1150 n.5.

It is undisputed that Plaintiff fell from his upper bunk and sustained injuries. While Plaintiff testified during his deposition that he is not certain whether he fell due to a seizure or due to rolling off the bunk half asleep, a reasonable jury may find that Defendants were aware of a serious *risk* of harm to Plaintiff's health or safety arising out of his assignment to a top bunk despite his seizure condition and a reasonable jury may find that Defendants disregarded that risk by failing to take reasonable measures to abate it once they were placed on notice.[7] Id. at 1150. This is all that must be shown and Plaintiff's lack of certainty regarding the ultimate cause of his fall does not entitle Defendants to judgment.

### G. Qualified Immunity

#### 1) Two-Part Inquiry

Defendants also argue that they are entitled to qualified immunity, which is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct.

---

[7] (Motion, Ex. D, Doc. 76-6, court record p. 27, depo. p. 47, lns. 12-14.)

2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a constitutional violation); Mueller, 576 F.3d at 993-94.

In this instance, for the reasons previously articulated, the evidence viewed in the light most favorable to Plaintiff demonstrates a constitutional violation and there exist triable issues of fact as to whether that right was violated. Therefore, the Court proceeds without further discussion to the second step of the inquiry.

### 2)   Clearly Established Right

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515 (2002). While the reasonableness inquiry may not be undertaken as a broad, general proposition, neither is official action entitled to protection "unless the very action in question has previously been held unlawful." Hope, 536 U.S. at 739. "Specificity only requires that the unlawfulness be apparent under preexisting law," Clement v. Gomez, 298 F.3d 898, 906 (9th Cir. 2002) (citation omitted), and prison personnel "can still be on notice that their conduct violates established law even in novel factual circumstances," Hope, 536 U.S. at 741.

///

1   By 2006, it had long been clear that the Eighth Amendment prohibits prison officials from
2   acting with deliberate indifference to an excessive risk of harm to a prisoner's safety or health. E.g.,
3   Farmer, 511 U.S. at 534.   The evidence must be viewed in the light most favorable to Plaintiff,
4   Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003), and in this case, it is Plaintiff's position
5   that he had a valid chrono for lower bunk/lower tier housing due to his chronic medical conditions,
6   including a seizure disorder; that he showed Defendants the chrono and told them about his need for
7   a lower bunk; and that Defendants took no action.
8   "Qualified immunity gives government officials breathing room to make reasonable but
9   mistaken judgments about open legal questions," Ashcroft v. al-Kidd, __ U.S. __, __, 131 S.Ct.
10  2074, 2085 (2011), and the existence of triable issues of fact as to whether prison officials were
11  deliberately indifferent does not necessarily preclude qualified immunity, Estate of Ford v. Ramirez-
12  Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).   Here, however, the law was sufficiently clear that a
13  reasonable officer, once placed on notice as to the existence of a medical issue precluding upper
14  bunk/upper tier housing, would have known that he was required to take reasonable measures to
15  abate the risk of harm; given that Defendants deny any knowledge of a risk, this case does not
16  involve a reasonable but mistaken judgment and Defendants are not entitled to qualified immunity.

**IV.     Conclusion and Recommendation**

In conclusion, the Court finds that there exist material factual disputes between the parties regarding whether Plaintiff had a medical need for a lower bunk between April and August 2006 and whether Defendants were placed on notice of that medical need but acted with deliberate indifference by failing to take reasonable measures to abate the risk of harm to Plaintiff.  As a result, Defendants are not entitled to judgment as a matter of law.

Defendants are also not entitled to qualified immunity because, assuming the truth of Plaintiff's version of events, the law was sufficiently clear that a reasonable officer would have known he was required to take reasonable abatement measures once he had been placed on notice of the existence of a medical need for a lower bunk.

Accordingly, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on July 6, 2012, be DENIED in its entirety and this matter be set for trial.

1    These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   December 12, 2012**                          /s/ Sheila K. Oberto
                                                                        UNITED STATES MAGISTRATE JUDGE